## MARCELLIN LANDRY *v.* THEODORE BLANCHARD, Sheriff, et al.

Paragraph 2d of article 3184 of the Civil Code giving a privilege on movables to a workman or laborer for the price of his labor on the movable which he has repaired or made, if the thing continues in his possession, applies only to him who has contracted to do the work, and not to journeymen and other mechanics whom he has employed to work under him.

Privileges are *stricti juris* (C. C. 3152) and the party claiming them must point to the express law which gives him such right of preference on account of the nature of the debt.

APPEAL from the District Court of the Parish of Iberville; *Avery, J.*
*Zenon Labauve,* for plaintiff and appellant. *Marcot & Debleux* for defendants.

MERRICK, C. J. The plaintiff injoined the sale of a raft of timber seized by the defendants as the property of one *Patrick Gleason,* against whom the defendant, *Léandre Descuir,* had obtained judgment decreeing him a privilege upon the raft for the sum of $519.

On the trial in the lower Court, the injunction was dissolved with eight per cent. interest and $50 special damages; and plaintiff appeals.

The facts of the case are, in substance, as follows:

The plaintiff is the owner of a saw-mill. *Gleason,* among other employment, delivers timber in rafts. In 1859, he contracted to deliver to the plaintiff, on Grand river, a raft to contain three hundred "trees." At the same time he contracted to deliver another party, named *Henry Sellier,* four hundred trees. He caused the timber to be cut and arranged into "cribs" of nine trees each to form the raft. He marked the three hundred trees to be delivered *Landry* with the letter L. He employed the defendant, *Descuir,* to "run" the rafts out of Bayou Pigeon, where they lay, and deliver three hundred trees to plaintiff and four hundred to *Sellier,* and contracted to pay him seventy-five cents a "tree." He in-

structed him to deliver the raft of three hundred trees to *Landry* first. In a conversation, *Gleason* told *Descuir*, contrary to the fact, that *Landry* had not paid him a cent on the raft.

*Descuir* divided the cribs and connected the portions thus separated into rafts, and brought the raft designed for *Landry* to land at a point designated by the latter above his saw-mill. He refused to deliver it entirely into the hands of *Landry*, unless the latter would pay him not only for the trees delivered him, but also for the trees delivered *Sellier*. *Landry* offered to pay him seventy-five cents a tree for the two-hundred and ninety-five trees delivered him, but declined to pay for those delivered *Sellier*. *Descuir* refused to receive the amount offered, "as he looked," (as he says) "to *Gleason* for his pay," and "he wanted to be paid the whole amount."

*Descuir* consented, however, to allow the plaintiff to put hands and ropes and a chain upon the raft, more effectually to secure it, but he kept some of his own hands upon it. The raft was measured by *Landry* and *Gleason*, and found to contain the two hundred and ninety-five trees. *Landry* advanced *Gleason* $1851 22, $485 of which was expressly upon the raft. *Descuir* instituted a suit by sequestration against *Gleason*, and obtained a judgment for the above-mentioned sum of $519, with a privilege upon said timber for the same, and issued thereon the execution which has occasioned the injunction. *Landry* was, however, no party to the suit.

The case presents the question, whether the defendant, *Descuir*, has a privilege for his labor upon the raft. His counsel contend that he lashed and spliced the cribs together and constructed the rafts ; that he propelled the same by " hauling and poling," and that he repaired the rafts until he brought them to the places agreed upon. He contends that this clearly brings his case within the application of paragraph 2 of Art. 3184 of the Civil Code. The paragraph is under the head, " Debts which are privileged on certain movables," and is in these words : " 2d. The debt of a workman or artisan for the price of his labor on the movable which he had repaired or made, if the thing continues in his possession."

The article does not appear to us to be applicable to the case. The contract was between *Gleason* and *Landry*, and it was the former who sold the trees to the latter. *Landry* did not enter into any contract with *Descuir*, and the latter was only the employee of *Gleason*, engaged at certain wages under a contract at best subsidiary to the original contract between *Gleason* and *Landry*. If the article of the Code cited gives the artisan a privilege, it must be understood as applying to him who has contracted to do the work, and not the journeymen and other mechanics whom he has employed to work under him.

Again : the object of the contract between *Gleason* and *Landry* was the delivery of logs as such. They had been formed from standing trees by *Gleason* himself, who had arranged them into cribs of nine trees each. *Descuir* arranged them into a raft for his own convenience in floating them to their destination. *Landry* had no use for a raft merely as such in any business which he conducted, and it was not on his own account that the raft was repaired while running.

The only advantage to him in having one raft instead of many, was, it might perhaps be more easily secured on its arrival. But the things which he needed and used were the logs which he sawed into lumber, and which *Gleason* had contracted to deliver. But suppose he could be considered the artisan who had manufactured a raft for the plaintiff, and that he had therefore a privilege for constructing the same; how much was this work worth ? The record does not in-

form us. If the privilege could exist, would it interfere with the vendor's privilege in favor of Gleason?

Privileges being *stricti juris*, as declared by article 3152 of the Civil Code, the party claiming a privilege must point to the express law which gives him such right of preference on account of the nature of the debt.

The contract between *Gleason* and *Descuir* possesses some analogy to that for the delivery of freight; yet it is distinguishable in this, *Descuir* was not a common carrier, and he was not the owner of the logs or of a craft which transported the merchandise.

It has also some analogy to that of the seaman who has a privilege under the maritime law for his wages. But it is evident that the contract between *Descuir* and *Gleason* cannot be classed with any one of these contracts, and we are not aware of any law, neither has any been cited, which confers upon him a privilege for his wages. See 17 L. R. 161; 1 Rob. 558.

It is, therefore, ordered, adjudged and decreed by the Court, that the judgment of the lower Court be avoided and reversed, and that the defendants be perpetually injoined from selling said raft of cypress trees described in the plaintiff's petition, and that the possession thereof be restored to the plaintiff; and it is further ordered, that the defendants pay the costs of both Courts.