Eastern Dist.
*April,* 1857.

UNION BANK
*vs.*
SLIDELL.

So, testamentary executors are not only accountable for what actually came into their hands, but are bound to administer faithfully, and are responsible for losses occasioned by their negligence.

---

### UNION BANK *vs.* SLIDELL.

#### APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

The *legal mortgage* given the wife on the property of her husband, for the restitution of her *dot*, is not regarded as of the *essence* of the constitution of dower. It may be modified or dispensed with by agreement of the parties.

So, the wife, who is a minor, but capable of contracting marriage, may, with the assistance of her parents, dispense with the legal mortgage, and by agreement in the marriage contract, take a special mortgage for the security and restitution of her *dot*, in lieu of it.

According to the Louisiana Code, no mortgage exists, except in the cases expressly authorized by law. So, no tacit or legal mortgage results to the wife from a donation *propter nuptias,* especially when it is made on condition of survivorship.

This is an action to compel the defendant to give additional security to the Union Bank on four hundred and twenty-eight shares of stock, on the ground that the property mortgaged is insufficient, because of the legal mortgage of the defendant's wife, for the restitution of her *dowry,* and a *donation propter nuptias.* The defendant denied that any tacit or legal mortgage existed on his property, as alleged by the counsel for the bank.

The legal mortgages in question, are alleged to result from the following clauses and articles of the marriage contract between the defendant and his wife:

"*Article* 1. There shall be no partnership nor community of acquests and gains between the future spouses.

"*Article* 2. The future husband declares to have made, and does hereby make donation to his future spouse, in case she should survive him, of the sum of thirty thousand dollars, which sum shall be taken beforehand from his succession, in preference to all other legacies or donations, and in preference to the rights of the heirs, whether legal or testamentary, of the said husband, and in case of the pre-decease of the said wife, this donation shall be considered as null, and of no effect.

"*Article* 3. In consideration of this marriage, the said Mr. and Mrs. Deslondes, father and mother, have instituted in dower, each one half, and in advance of her share of inheritance *(en avancement d'heirié)* from their respective successions to the said future spouse, their daughter, here excepting, the sum of six thousand dollars, which sum has been really counted and delivered to the future husband, who acknowledges it, and gives discharge thereof. And the said husband consents, by these presents, to remain charged towards the said Marié M. Deslondes, his future wife, with the above mentioned sum of six thousand dollars, which is the amount of her dower, (*dotaux apports.*)

"*Article* 4. In order to secure the payment and faithful reimbursement of the said sum of six thousand dollars, amount of the dower of the said future wife, to her heirs and assigns, the said future husband does, by these presents, affect, bind, and specially mortgage, in favor of the said wife, a lot of ground, situate in the city of New-Orleans, &c., which mortgage is accepted by the said future wife, with the assistance and authorization of her aforesaid father and mother.

"*Article* 5. The future spouses, the wife assisted and authorized as aforesaid, declare to have released from the legal and general mortgage, to which said wife would have right over the property, present and future, of her husband, by the fact alone of the celebration of the marriage, all other properties without exception, which the said husband at present owns, and all those to which he may, during the said marriage acquire right, whether by sale, exchange, succession, donation, or otherwise ; the said wife, assisted and authorized as aforesaid, declaring to have formally renounced by these presents, every general mortgage, legal or tacit, and all privileges and other rights, which the laws of this state give, or may give to her, over the property of her said husband, whether for the restitution of her dower, or of the donation, *propter nuptias,* made in consideration of this marriage."

In consequence whereof, the future husband may sell, alienate and mortgage all his said other property, or otherwise make and dispose of the same as to him shall seem fit, without the renunciation on the part of the future wife to the mortgage, general, legal or tacit, to which she would otherwise have right, being requisite or necessary for the validity of the contracts which might be made by the said husband, and for the security of every purchaser, vendor, or other person who might be interested therein.

The whole has been thus contracted and agreed to between the parties.

There was judgment for the defendant, and the plaintiff appealed.

4

EASTERN DIST.    *Denis*, for the plaintiff, contended that the wife had a
*April*, 1837.   legal mortgage on all the property of her husband, for dona-
UNION BANK       tions *propter nuptias*, in the same manner as for other donations.
*vs.*            *Louisiana Code*, 2355.   *Civil Code of* 1818, *page* 455, *articles*
SLIDELL.         15, 16, 17. *Ibid*. 335, *article* 53. 4 *Louisiana Reports*, 556, 558.

2. In this case, the wife has a legal mortgage for the restitution of her *dowry*, because the special mortgage attempted to be given in the marriage contract, is not such as is contemplated by law. *Louisiana Code*, 3310, 3311, 3312, 2357.

*Grymes, contra.*

*Bullard, J.*, delivered the opinion of the court.

· The defendant having given a mortgage to the Union Bank of Louisiana, as stockholder, engaged, in case the right or title to the property mortgaged, should be deemed insufficient, on account of some defects, or of some tacit mortgage, or if any claim or right of mortgage should be exercised upon the same, that he would furnish other secuties to the satisfaction of the board of directors.   The object of the present suit is to require such additional securities, on the allegation, that the plaintiffs have discovered, that by the marriage contract of the defendant, the property in question had been incumbered by a legal mortgage in favor of his wife, firstly, for the restitution of her dower of six thousand dollars, and secondly, to secure a donation *propter nuptias* for the sum of thirty thousand dollars.

I. It appears by the marriage contract of the defendant, that the father and mother of the future wife settled a dower of six thousand dollars, and it was expressly agreed that the reimbursement of the dower was secured by special mortgage on a certain lot of ground in New-Orleans, and all other property of the defendant, present and future, is declared to be free from any tacit or legal mortgage, which would have resulted from the celebration of the marriage, independently of such agreement and stipulation ; and the future wife, with the consent and assistance of her father and

mother, she being a minor, expressly and formally renounces any, and all such general, legal, or tacit mortgage.

It is conceded on all hands, that without such agreement, a general legal mortgage would have resulted from the marriage by operation of law. The only question, therefore, which this part of the case presents, appears to be, whether such an agreement is tolerated by law, or in other words, whether a minor, capable of contracting marriage, be legally capable of binding herself by such an agreement, and of confiding her dower to her future husband on such conditions.

Those articles of the code relied on by the counsel for the appellant, to show that such general legal mortgage can be dispensed with, only with the consent of a family meeting, evidently relate to cases where the mortgage had already attached, and the husband, after marriage, seeks to exonerate the mass of his property on creating a special mortgage on a particular part of it. *Louisiana Code, articles 3310, 3311, 3312, 2357.*

It may, however, be fairly inferred from these provisions of the code, that the legal mortgage, as means by which the reimbursement of the dower is secured to the wife or her heirs, at the dissolution of the marriage, is not regarded as of the *essence* of the constitution of dower; and it would seem not illegal to conclude, that if it could be destroyed or modified when in existence, by agreement of the parties, it might well be dispensed with in future, by agreement on the part of the person for whose benefit it was intended. But the code contains other provisions more direct and explicit on this subject: It is declared, that in relation to property, the law regulates the conjugal association only in default of particular agreements, which parties are at liberty to stipulate as they please, under certain restrictions. They cannot alter the legal order of descents, nor derogate from the marital or paternal authority, nor the prohibitory dispositions of the code, and provided their agreements be not contrary to good morals. *Louisiana Code, 2305-6-7.*

The *legal mortgage* given the wife on the property of her husband, for the restitution of her *dot*, is not regarded as of the *essence* of the constitution of dower. It may be modified or dispensed with by agreement of the parties.

The code further declares, that minors who are capable of contracting marriage, may give their consent to any agree-

So, the wife, who is a minor, but capable of contracting marriage, may, with

the assistance of her parents, dispense with the legal mortgage, and by agreement in the marriage contract, take a special mortgage for the security and restitution of her *dot*, in lieu of it.

ment of which their contract is susceptible, provided they be assisted in the agreement by those persons whose consent is necessary to their marriage. *Article* 2310.

We have not been able to discover any provision of law by which such an agreement is prohibited ; on the contrary, we have already observed, that married persons are permitted, even during marriage, to substitute a special in lieu of a general legal mortgage, as security for the reimbursement of the dowry, even in cases where the wife is yet a minor. *Article* 3312.

It is expressly declared by article 3305, that when parties, being of age, shall, by their marriage contract, agree that the recording shall exist only on one ,or more immovables belonging to the husband, the property not included shall remain free and released from mortgage for the wife's dower, but the same article forbids its being dispensed with altogether. Persons of age are then capable of entering into such agreements, and we have already seen that minors, in relation to marriage contracts, possess all the capacities of persons of age, when properly assisted.

According to the Louisiana Code, no mortgage exists, except in the cases expressly authorized by law. So, no tacit or legal mortgage results to the wife from a donation *propter nuptias*, especially when it is made on condition of survivorship.

II. With respect to the alleged mortgage resulting from the donation *propter nuptias*, we must assume as an undoubted principle, that no mortgage exists, except in the cases expressly authorized by law. Whatever may have been the opinion of this court, as to the existence of a mortgage in such a case, under the Spanish law, and the code of 1808, we are now to look only to the Louisiana Code, and subsequent statutes, for authority on this point.

The counsel of the appellant has relied on the second clause of article 2355, in support of the pretensions of the bank. That article creates in favor of the wife a legal mortgage, 1st, for the restitution of her dower, and the replacing of her dotal effects, which she has brought at the time of her marriage, and which were alienated by the husband, and judgment for the restitution or replacing of her dotal effects, which she acquired during marriage, either by succession or by donation, from the day when such succession devolved to her, or such donation began to have its effect.

EASTERN· DIST;·
*April*, 1837.

This article appears· to us to distinguish between those dotal effects whioh were· brought ·into marriage, and those which came into the husband's possession afterward, either· by succession or donation, in relation to the time when the legal mortgage shall attach.   In the first case, it takes effect. from the celebration of the marriage; in the second, from the time the succession devolved to her or the donation began to· have its effect.   In both clauses of the article, dotal effects only are spoken of; but even supposing the ·article ·to be susceptible of a different construction, we are of opinion· that the donation in this case has not began to have its effect.   It is essentially a donation *mortis causa,* on condition ·of survivorship.   It can have its effect only on the happening of that contingency.

We conclude that the plaintiffs have failed in supporting· their allegations. ·

It is, therefore, ordered and decreed, that the judgment of the District Court be affirmed, with costs.